Filed 11/30/21  P. v. Ruiz CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076420 |
| v. | (Super.Ct.No. FSB023832) |
| MICHELLE ANN RUIZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ronald M. Christianson, Judge.  Reversed.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

Jason Anderson, District Attorney, Michael Abney, Deputy District Attorney, for Amicus Curiae on behalf of Plaintiff and Respondent.

## FACTUAL AND PROCEDURAL HISTORY

### A.    PROCEDURAL HISTORY

On October 13, 2000, an amended information charged defendant and appellant Michelle Ann Ruiz and codefendants Ray Varela, Donald Lee Collins, Christine Lopez, and Luis Berumen (codefendants) with murder under Penal Code[1] section 187 subdivision (a) (count 1); and second degree robbery under section 211 (count 2). As to both counts, the amended information also alleged that a principal was armed with a firearm, a handgun under section 12022, subdivision (a)(1). The amended information further alleged that defendant had one prior strike under sections 1170.12, subdivisions (a) through (d) and 667, subdivisions (b) through (i), and three prison priors under section 667.5, subdivision (b).

In a bifurcated proceeding, the jury found defendant guilty of first degree murder and second degree robbery, during both of which a principal was armed with a firearm. The trial court found true the strike prior and three prison priors.

On January 23, 2002, the trial court sentenced defendant to a determinate term of eight years, and an indeterminate term of 50 years to life in prison.

After defendant appealed, we affirmed the judgment in an unpublished opinion.[2]

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] *People v. Berumen* (June 25, 2003, E031006), 2003 WL 21464625 [nonpub. opn.]). On April 1, 2021, we took judicial notice of our record in case No. E031006.

On January 17, 2019, defendant in propria personal filed a petition for resentencing under section 1170.95. Defendant requested (1) that her murder conviction be vacated pursuant to the changes to sections 188 and 189, as amended by Senate Bill No. 1437; and (2) that the court resentence her.

On January 8, 2021, after the appointment of counsel and written briefing, the trial court denied the resentencing petition. The court found that defendant failed to make a prima facie showing of entitlement to relief.

On January 13, 2021, defendant filed a timely notice of appeal from the denial of her section 1170.95 petition.

B.     FACTUAL HISTORY[3]

"Berumen was 16 at the time of the crimes. Lopez is Berumen's mother. Ruiz was Lopez's live-in lover. Varela is Berumen's cousin and Lopez's nephew. Berumen and Varela shared a room at their grandmother's home in Victorville.

"The victim was a Native American from the San Manuel Band of Mission Indians (Tribe), who received $51,000 per month from the Tribe. He drank and used drugs. Between May and late August 1999, Lopez and Ruiz lived at his home and he provided them with money for drugs, trips to Las Vegas, jewelry, and other gifts. A few days before the crimes, the victim became angry with the women and had them leave his property. There was a physical fight between the victim and the women.

---

[3] The facts are taken from our unpublished opinion in *People v. Berumen*, *supra*, E031006.

3

"An accomplice to the crimes, named Collins, testified that beginning about three weeks before the crimes, Varela and Berumen, and, at one point Lopez, persuaded him to participate with them in robbing the victim. Collins was told that the victim was very rich, but was careless with his money, and they could catch him while he was sleeping, restrain him with duct tape and take his money. Lopez showed Collins a wad of money she claimed she had taken from the pockets of the victim's jacket while she lived on the latter's property. She told Collins that the victim would be getting his monthly check from the Tribe on August 25, he carried large amounts of cash on his person, and it would be easy to rob him. At one point, outside the presence of Lopez, Berumen said he would use his handgun during the robbery. He and Varela said they were going to find a gun for Varela to use, but they were unsuccessful in locating one. Either Berumen or Lopez said Berumen would not use the gun except to pistol whip the victim with it, if necessary. Late on August 27, 1999, Berumen and Varela gathered up clothing, duct tape, a gun and a knife, and had Collins drive them to the place where Lopez and Ruiz were staying. Lopez and Ruiz assured the males that the robbery would be easy. Ruiz said the victim was spoiled, stuck up, and deserved to be robbed. The women helped Berumen and Varela don the dark attire, beanies and bandannas they were going to wear during the robbery, including cutting up garments to use as face masks. Berumen and Varela announced that they were going to disguise their voices to make themselves sound like African-Americans and pretend they were from I.E. Projects, a gang with which the victim had had encounters in the past. Lopez told the males that she would park her car down the street from the victim's home and run over anyone who ran out during the

4

robbery. Lopez drove her car with Ruiz in the passenger seat and led Collins, with Berumen and Varela in his car, to the victim's house, after Ruiz pointed out the freeway on-ramp Lopez had promised them she would show them so they could get back to Victorville after the robbery. After discovering that the victim was playing pool outside with some acquaintances, even though it was about 5:00 a.m., Berumen and Varela left the duct tape in Collins's car.

"Two eyewitnesses testified that Berumen and Varela, wearing dark clothes, bandannas on their faces, gloves on their hands, and hoods and beanies on their heads, approached the victim as he played pool. Varela, who said, 'This is I.E. Projects,' held a knife to the victim's chest, demanded his money, and took almost $6,000, receipts, jewelry, and car keys from his pockets. When the victim attempted to claim that he had no money, Varela told Berumen to shoot him. After Varela moved away from the victim, Berumen shot the latter four times, killing him.

"Collins testified that Berumen and Varela ran up to his car and Berumen jumped into the back seat, saying, 'I blasted one of those motherfuckers.' Varela got into the car and announced that he had a 'gang of hundred dollar bills.'

"A police officer testified that he saw Berumen and Varela run up to Collins's parked car and hop in. He suspected them of having just tagged something, so he pulled the car over. Berumen and Varela lied about what they had been doing. After overhearing a transmission from the officer's radio that a shooting had occurred in the area, Collins admitted that they had been involved in what he said was supposed to be only a robbery. Lopez's car drove by, then parked some distance away, and she

approached the officer and his ride-along companion, telling them to let Berumen go as he had done nothing wrong. All five were arrested." (*People v. Berumen*, *supra*, E031006.)

**DISCUSSION**

A. <u>THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT DID NOT SET FORTH A PRIMA FACIE CASE FOR RELIEF UNDER SECTION 1170.95</u>

Defendant contends that the trial court erred in denying her section 1170.95 petition because the court used an erroneous substantial evidence standard when it reviewed the record of conviction to determine that she failed to make a prima facie showing of eligibility for relief. The People agree. The People agree that "[t]he trial court's summary denial of appellant's section 1170.95 petition was incorrect because the record of conviction did not establish [s]he was ineligible for resentencing as a matter of law. Accordingly, the trial court should have issued an order to show cause and conducted an evidentiary hearing." We agree with the parties.

1. *ADDITIONAL PROCEDURAL HISTORY*

Defendant filed a form petition for resentencing where she checked paragraph 2a of the petition, which states: "At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine."

At the hearing, the trial court noted that defendant and her codefendants had been tried under several theories of liability for murder—felony murder, the natural and probable consequences doctrine, and as direct aiders and abettors to premeditated murder.

6

Berumen was the actual killer, and defendant and codefendants directly aided and abetted Berumen in the premeditated murder of the victim. The court noted that our opinion in *Berumen* held there was sufficient evidence to convict both defendant and codefendant Lopez as aiders and abettors to premeditated murder "if that was the theory that the jury had relied upon."

The trial court, therefore, held that because defendant was a direct aider and abettor to premeditated murder of the victim, she could not establish a prima facie case for section 1170.95 relief.

## 2. *LEGAL BACKGROUND*

"The Legislature enacted Senate Bill [No.] 1437 [(Stats. 2018, ch. 1015)] to 'amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant of the underlying felony who acted with reckless indifference to human life.' [Citation.] The bill amended sections 188 and 189, which pertain to the definition of malice and the degrees of murder." (*People v. McClure* (2021) 67 Cal.App.5th 1054, 1061.)

"The Legislature amended section 188 by adding subdivision (a)(3), which provides: 'Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' [Citations.] And section 189, subdivision (e), now limits liability for murder to a person who was either the actual killer or, though not the actual killer, acted 'with intent to kill' and 'aided,

7

abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer' in the commission of first degree murder, or was 'a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' " (*People v. McClure*, *supra*, 67 Cal.App.5th at p. 1061.)

"In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' [Citations.] Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' [Citation.] If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.' " (*Lewis*, *supra*, 11 Cal.5th at pp. 959-960.) "Where the petition complies with subdivision

8

(b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief." (*Id.* at p. 960.)

Section 1170.95, subdivision (c), "describe[s] a single prima facie showing." (*Lewis*, *supra*, 11 Cal.5th at p. 962.) Further, "a trial court can rely on the record of conviction in determining whether that single prima facie showing is made." (*Id.* at p. 979.) The Supreme Court has explained that "the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id.* at p. 971, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 978-979 (*Drayton*).)

"In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] As the People emphasize, the 'prima facie bar was intentionally and correctly set very low.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972; see also *Drayton*, *supra*, 47 Cal.App.5th at p. 980.) "If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the

9

requirements of section 1170.95[, subdivision] (a), then the trial court should issue an order to show cause." (*Drayton*, at p. 980.)

"If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.] 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' [Citation.] At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' " (*Lewis*, *supra*, 11 Cal.5th at p. 960.)

Where, as here, our analysis of the trial court's ruling turns on interpretation of section 1170.95 and the trial court's authority to engage in independent factfinding when summarily denying a petition under section 1170.95, subdivision (c), we review the ruling de novo. (See *Drayton*, *supra*, 47 Cal.App.5th at p. 981; *People v. Duchine* (2021) 60 Cal.App.5th 798, 811 (*Duchine*).)

       3.    *ANALYSIS*

In this case, the trial court properly considered the record of defendant's conviction to conclude that she could have been convicted as a direct aider and abettor to premeditated murder. (*Lewis*, *supra*, 11 Cal.5th at p. 979.) Even with the changes to

10

sections 188 and 189, defendant could have been convicted of first degree murder as a direct aider and abettor *if* that were the theory upon which the jury relied.

The record in this case, however, shows that the jury was also instructed on felony murder and the natural and probable consequences doctrine as potential theories of murder liability for defendant.

Under the circumstances in this case, we conclude the trial court should have issued an order to show cause and conducted a hearing pursuant to section 1170.95, subdivision (d), at which the prosecution bears the burden of proving, beyond a reasonable doubt, that defendant is ineligible for resentencing. (§ 1170.95, subdivision (d)(3).)

4.    *AMICUS CURIAE BRIEF*

On September 1, 2021, the San Bernardino County District Attorney filed a combined application for permission to file amicus curiae brief and proposed brief of amicus curie. On September 3, 2021, we granted the district attorney's request. In the amicus curiae brief, the district attorney acknowledges that "the Attorney General . . . concedes that the trial court's decision dismissing [defendant]'s section 1170.95 petition should be reversed," but "respectfully disagree[s] with this concession."

The district attorney argues that both defendant and the Attorney General "ignores [*sic*] the clear language of section 1170.95(a)(3), which requires that a petitioner under that section show that she 'could not be convicted' of murder under a theory supported by the current state of law. Instead, both [defendant] and the Attorney General implicitly

11

and incorrectly take the position that [defendant] need only show that she in fact *was not*, rather than *could not be*, convicted under a still-viable theory."

We do not agree with the district attorney. In our view, interpretation of the language in section 1170.95, subdivision (a)(3), adopted by the district attorney to determine whether an order to show cause should issue under section 1170.95, subdivision (c), is incompatible with the Supreme Court's more recent statements in *Lewis*. (See *Lewis*, *supra*, 11 Cal.5th at pp. 971-972.) Moreover, in *People v. Lopez* (2020) 56 Cal.App.5th 936, 949-951, review granted February 10, 2021, S265974, the court concluded that "to establish a petitioner's ineligibility for section 1170.95 relief for failure to satisfy the third condition [under section 1170.95, subdivision (a)(3)], the prosecutor must prove beyond a reasonable doubt the elements of first or second degree murder under the current law." (*Id.* at p. 951.)

Furthermore, as we stated *ante* and as the court of appeal explained in *Drayton*, *supra*, 47 Cal.App.5th at p. 980, "when assessing the prima facie showing, the trial court should assume all facts stated in the section 1170.95 petition are true. [Citation.] The trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law . . . . However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subdivision (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (Accord, *Lewis*, *supra*, 11

12

Cal.5th at p. 971 [" '[a] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing' "]; *Duchine*, *supra*, 60 Cal.App.5th at p. 815 ["the time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the prima facie stage, at least where the record is not dispositive on the factual issues"].)

The district attorney goes on to state that the trial court's order should be affirmed because the trial court did not actually make any independent factual findings. The district attorney contends that the trial court merely found facts in the record of conviction that refuted defendant's allegations as matter of law. We disagree.

Here, contrary to the district attorney's contention, the trial court reviewed the record and independently determined that the facts in the record provided substantial evidence to support a murder conviction under the current law. The court stated: "The Court has reviewed the People's supplemental response, the 2003 Court of Appeal decision affirming the petitioners' convictions and the jury instructions from the court file.

"The evidence at trial established that Codefendant Berumen was the actual killer. The petitioners were prosecuted under several theories of liability for the murder, including felony murder, natural and probable consequences, and as direct aiders and abettors to malice aforethought premeditated murder.

"Without reiterating all of the facts and evidence set forth in the Court of Appeal decision, the opinion clearly establishes that there was sufficient evidence presented at trial to convict each of the petitioners on the theory that they directly aided and abetted Berumen in the malice aforethought premeditated murder of the victim."

"The Court of Appeal itself addressed the sufficiency of the evidence as to [defendant] and Lopez. Beginning on page 21 of the opinion, the court of Appeal specifically held that there was sufficient evidence to convict both [defendant] and Lopez as aiders and bettors to the premeditated murder, *if* that was the theory that the jury had relied upon." (Italics & boldface added.)

This statement by the trial court clearly shows that the court reviewed the record of conviction and our appellate opinion and determined that there was sufficient evidence to support the murder conviction under the current law. The court's judicial factfinding was inappropriate at the prima facie stage, as discussed *ante*, we held that there was sufficient evidence to convict defendant as an aider and abettor to the premeditated murder, *if* that was the theory the jury had relied up on. Here, defendant was tried on many different theories of murder. There is nothing in our opinion that states that defendant, as a matter of law, was convicted of murder as an aider and abettor.

For these reasons, we reverse the trial court's order denying defendant's petition and remand with directions to issue an order to show cause under section 1170.95, subdivision (c), and hold a hearing pursuant to section 1170.95, subdivision (d). We express no opinion about defendant's ultimate entitlement to relief following the hearing. (§ 1170.95, subd. (d)(2).)

14

**DISPOSITION**

The trial court's order denying defendant's section 1170.95 petition for resentencing is reversed. The matter is remanded to the trial court with directions to issue an order to show cause (§ 1170.95, subd. (c)) and hold a hearing to determine whether to vacate defendant's murder conviction and to recall her sentence and resentence her (§ 1170.95, subd. (d)).

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.

15